Filed 8/5/24  P. v. Randolph CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B330824 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA183257) |
| v. | |
| COLIN RANDOLPH, | |
| Defendant and Appellant. | |

THE COURT:

Colin Randolph appeals the order of the superior court denying his postjudgment petition for resentencing under Penal Code[1] section 1172.6.  (Former § 1170.95, Stats. 2022, ch. 58, § 10.)  We appointed counsel to represent Randolph on appeal.  After examination of the record, counsel filed an opening brief raising no issues and requesting that we exercise our discretion to independently review the record for arguable issues pursuant

---

[1] Undesignated statutory references are to the Penal Code.

to *People v. Delgadillo* (2022) 14 Cal.5th 216, 228–232
(*Delgadillo*).

## BACKGROUND

On June 8, 2001, Randolph was convicted by jury of the
first degree murder (§ 187, subd. (a); count 1) of Larry Houston
on February 14, 1999, with true findings on the allegations that
during the commission of the offense Randolph personally and
intentionally discharged a firearm causing great bodily injury
and death (§§ 12022.53, subds. (b), (c) & (d), 12022.5, subd.
(a)(1)).  The jury also convicted Randolph of two counts of
attempted willful, deliberate, and premeditated murder
(§§ 664/187, subd. (a); counts 2 & 3), and found true the
allegations as to both counts that Randolph personally and
intentionally discharged a firearm causing great bodily injury
(§§ 12022.53, subds. (b), (c) & (d), 12022.5, subd. (a)(1)), and
personally inflicted great bodily injury in the commission of the
offense (§ 12022.7, subd. (a)).  The trial court sentenced Randolph
to an aggregate term of 50 years to life.

On November 21, 2022, Randolph filed a section 1172.6
petition for resentencing.  The superior court appointed counsel,
and the district attorney filed a response to the petition.
Randolph filed a reply in propria persona, which was adopted by
defense counsel and accepted by the superior court.  The
prosecution opposed the petition on the ground that the jury
convicted Randolph of one count of first degree murder and two
counts of attempted willful, deliberate and premeditated murder,
with true findings on allegations as to all counts that Randolph
personally and intentionally discharged a firearm causing great
bodily injury and death within the meaning of section 12022.53,
subdivision (d).  While acknowledging that the trial court had

instructed with CALJIC No. 3.02 on the natural and probable consequences theory of culpability, that instruction was modified expressly to apply only to codefendant James Tucker. The People further argued that Randolph was convicted of first degree murder, and the only legal theory on which the jury was instructed was willful, deliberate and premeditated murder under CALJIC No. 8.20. Because the jury made clear in its verdicts that Randolph was the actual shooter who personally inflicted great bodily injury and death, and his murder and attempted murder convictions did not rest on any theory of imputed malice, he is ineligible for resentencing relief as a matter of law.

The matter came on for prima facie review on May 12, 2023. Following argument by the parties, the superior court announced it had reviewed the petition, the People's response, Randolph's reply, the court file, the December 26, 2002 decision on appeal from the conviction, and the abstract of judgment. The court recited the jury's findings as stated in its verdict, noting that the court may deny a petition at the prima facie stage if a specific jury finding establishes ineligibility for relief as a matter of law.

The superior court then explained that "[a] petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no fact-finding, weighing of the evidence, or credibility determinations that, one, the petitioner was the actual killer; or [¶] Two, the petitioner was not the actual killer but, with intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree; or [¶] Three, the petitioner was a major participant in the underlying

3

felony and acted with reckless indifference to human life; or [¶] Four, petitioner acted with malice aforethought that was not imputed, based solely on participation in a crime."

With these principles in mind, the superior court found that Randolph had failed to make a prima facie showing of eligibility for relief under section 1172.6. The court noted the jury's express findings that in committing first degree murder and the attempted, willful, deliberate, and premeditated murders, Randolph personally used a firearm, and personally and intentionally discharged the firearm, proximately causing great bodily injury and death, and he personally and intentionally inflicted great bodily injury.

The superior court then denied Randolph's section 1172.6 petition on the ground that he had failed to make a prima facie showing for relief as a matter of law.

On appeal, Randolph filed his own supplemental brief in which he asserts: (1) He was tried under a legal theory that permitted the jury to convict him as a perpetrator or an aider and abettor; (2) Nothing in the record of conviction establishes that the jury convicted him as the actual killer or the person responsible for firing the shots in the attempted murders; (3) The true findings on the firearm enhancement allegations do not per se render petitioner ineligible for relief under section 1172.6; (4) The jury received additional ambiguous instructions regarding the firearm enhancements that created a pathway for jurors to misapply other instructions given.

In support of these contentions, Randolph submitted the following documents:

4

(1)  Exhibit A:  Eight pages of reporter's transcript from trial proceedings in this case on May 21, 2001, regarding the delayed discovery of certain ballistics evidence;

(2)  Exhibit B:  This court's unpublished opinion in Randolph's direct appeal from his conviction.  (*People v. Randolph* (Dec. 26, 2002, B151628) [nonpub. opn.].);

(3)  Exhibit C:  A posttrial declaration by David Vallier, dated September 14, 2012;

(4)  Exhibit D:  A letter from Demetrice Denegal to the Los Angeles County District Attorney's Office, dated December 3, 2018; and

(5)  Exhibit E:  A posttrial declaration by Demetrice Denegal, dated February 28, 2019.

## DISCUSSION

Because the instant appeal is not from his conviction, Randolph is not entitled to our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436, or its federal constitutional counterpart, *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493].  (*Delgadillo, supra,* 14 Cal.5th at p. 227 ["Courts below have uniformly agreed that *Wende* procedures are not constitutionally required on an appeal from a denial of a postconviction petition under section 1172.6"]; *People v. Kelly* (2006) 40 Cal.4th 106, 119 [independent judicial review mandated by *Anders* applies only to first appeal as of right]; see also *Pennsylvania v. Finley* (1987) 481 U.S. 551, 559 [107 S.Ct. 1990, 95 L.Ed.2d 539].)

However, although "[t]he filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues," we are required to address the contentions Randolph raises in his supplemental brief.

5

(*Delgadillo, supra,* 14 Cal.5th at p. 232 ["the Court of Appeal is required to evaluate the specific arguments presented in [the supplemental] brief and to issue a written opinion"].)

## I.  Randolf Failed to Establish a Prima Facie Case for Relief Under Section 1172.6

### A. Section 1172.6

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) in 2018, effectively abolishing the natural and probable consequences doctrine in cases of murder and limiting the application of the felony-murder doctrine.  (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  With one narrow exception (see § 189, subd. (f)), Senate Bill No. 1437 effectively eliminated murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life.  (§§ 188, subd. (a)(3), 189, subd. (e).)

Senate Bill No. 1437 also enacted former section 1170.95 (now § 1172.6), which established a procedure for vacating the murder convictions of defendants who could no longer be convicted of murder because of the amendments to sections 188 and 189.  (Stats. 2018, ch. 1015, § 4; *Lewis*, *supra*, 11 Cal.5th at pp. 957, 959, 971; *People v. Gentile* (2020) 10 Cal.5th 830, 843.)  Effective January 1, 2022, Senate Bill No. 775 amended section 1172.6 to expand its coverage to individuals convicted of "attempted murder under the natural and probable consequences

6

doctrine." (§ 1172.6, subd. (a); *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

Section 1172.6, subdivision (c) requires the superior court to appoint counsel when requested upon the filing of a properly pleaded petition for resentencing. (*Lewis, supra*, 11 Cal.5th at pp. 963, 966.) The court must then conduct a prima facie analysis with briefing to determine the petitioner's eligibility for relief, and, if the requisite prima facie showing is made, issue an order to show cause. (§ 1172.6, subd. (c); *Lewis*, at p. 971; *People v. Nieber* (2022) 82 Cal.App.5th 458, 469–470.) In conducting this review, our Supreme Court has held that the superior court can and should look to the record of conviction. (*Lewis, supra*, 11 Cal.5th at pp. 970–971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].) And "[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the [superior] court may dismiss the petition." (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

We independently review the superior court's prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law. (*People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 930.)

**B.  The record of conviction establishes that Randolph is ineligible for section 1172.6 relief as a matter of law**

*1. The jury instructions and verdicts*

Randolph was convicted of one count of first degree murder.[2]  In order to find Randolph guilty of first degree murder, the instructions required the jury to find the murder was a willful, deliberate, and premediated killing with express malice aforethought.  (CALJIC No. 8.20.)  The instructions defined the terms "willful," "deliberate," and "premeditated" (*ibid.*), and explained that "[m]alice is express when there is manifested an intention unlawfully to kill a human being" (CALJIC No. 8.11).

With respect to the attempted murders, the jury was instructed:  "In order to prove attempted murder, each of the following elements must be proved:  [¶]  1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."  (CALJIC No. 8.66.)  The jury convicted Randolph on two counts of attempted murder, and as to each count found true the special allegation that the attempted murder was willful, deliberate, and premeditated.  (See CALJIC No. 8.67.)

The trial court also instructed the jury on aiding and abetting.  CALJIC No. 3.00 explained that "[p]ersons who are

---

[2] Randolph's jury was also instructed on the definitions and elements of second degree murder (CALJIC Nos. 8.30, 8.31) and voluntary manslaughter (CALJIC No. 8.40), as well as the distinction between murder and manslaughter (CALJIC No. 8.50).

involved in committing or attempting to commit a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include: [¶] 1. Those who directly and actively commit or attempt to commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission or attempted commission of the crime."

CALJIC No. 3.01 instructed that "[a] person aids and abets the commission or attempted commission of a crime when he, [¶] 1. With knowledge of the unlawful purpose of the perpetrator and [¶] 2. With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] 3. By act or advice aids, promotes, encourages or instigates the commission of the crime."

The jury was further instructed on an aider and abettor's liability for murder under the natural and probable consequences doctrine (CALJIC No. 3.02), but the instruction was modified to apply only to Randolph's codefendant, Tucker: "One who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted. [¶] *Under this theory, in order to find the defendant Tucker guilty of the crime of murder as charged in Count 1*, you must be satisfied beyond a reasonable doubt that: [¶] 1. The crime of murder was committed; [¶] 2. That the defendant aided and abetted that crime[ ]; 3. That a co-principal in that crime committed the crime of murder; and [¶] 4. The crime of murder was a natural and probable consequence of the commission of the crime of assault with [a] firearm." (Italics added.)

9

The trial court did not give any instruction on felony murder or any other theory of liability under which malice could be imputed to Randolph.

*2. Randolph was not convicted of murder or attempted murder under the natural and probable consequences doctrine or any other theory of imputed malice*

In his supplemental brief, Randolph asserts that "the trial court gave the standard CALJIC No[s]. 3.00, 3.01 and 3.02 instructions without any modifications or clarifications, [and] given the substantial role Tucker played . . . , the law permitted and [the trial court] encouraged . . . the jury to view both defendants as aider[s] and abettors." Randolph argues that the trial court's response to a jury question during deliberations permitted the jury to impute malice to Randolph based on these aiding and abetting instructions. According to Randolph, "the jury could have believed it did not need to resolve the question of whether or not the [prosecutor] proved beyond a reasonable doubt petitioner fired any of the bullets that struck any of the victims, because they could convict him of murder if they believed murder and attempted murder was the natural and probable consequence of discharging a firearm into the air."

However, contrary to Randolph's assertion, CALJIC No. 3.02 was modified, and specifically limited application of the natural and probable consequences doctrine to Tucker's culpability. We find nothing in these instructions that permitted the jury to convict Randolph under the natural and probable consequences doctrine or any other theory of imputed malice.

The trial court's answer to the jury's question also did not extend the application of a natural and probable consequences theory of liability to Randolph. During deliberations, the jury

10

submitted the following question regarding CALJIC No. 3.01: "If a defendant knew his co-defendant intended to get into a fight but did not necessarily know his co-defendant intended to shoot a gun, would that constitute 'knowledge of unlawful purpose'?"

The trial court responded first by stating that CALJIC No. 3.01 was only one of the aiding and abetting instructions given, and encouraged the jury to consider CALJIC No. 3.02. Under that instruction, the court explained, "[I]f you find that as a natural and probable consequence of certain acts, something that was completely unknown or whatever, happens, but it is a natural and probable consequence of what was known, you can still find aiding and abetting. You find it under 3.02 not 3.01. [¶] I will give you a quick example. There is law in this state that states if it was not unreasonable and it was a natural and probable consequence that someone who got in a fight and then someone was shot, that person does not necessarily have to have known that there was going to be a gun—provided that you find that shooting, be it attempted murder, murder, [assault] with a deadly weapon—provided that was a natural and direct consequence of, I am going to go have a fight."

We disagree with Randolph's contention that the jury instructions together with the trial court's response to the jury's question permitted the jury to convict Randolph under the natural and probable consequences doctrine where the instructions themselves expressly precluded that possibility. " 'Jurors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions.' " (*People v. Thomas* (2023) 14 Cal.5th 327, 382.) Nothing in the court's response to the jury's question altered the express limitation in the written instruction that the

11

natural and probable consequences doctrine only applied to Tucker. We will not presume the jury misunderstood or failed to follow the court's instructions on the law. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 431.)

CALJIC Nos. 3.00 and 3.01 were not so limited. But to the extent the jury relied on aiding and abetting in order to convict Randolph on the murder and attempted murder charges, the instructions specifically required the jury to find Randolph acted to promote the murder and attempted murders "with knowledge of the unlawful purpose of the perpetrator." (CALJIC No. 3.01.) For the first degree murder conviction, that meant the jury had to find Randolph knew the perpetrator was acting with "express malice aforethought." (CALJIC No. 8.20.) And for the attempted murder convictions, that required finding Randolph knew the perpetrator was acting with "a clear, deliberate intent to kill." (CALJIC No. 8.67.) In other words, in order to convict Randolph as an aider and abettor of first degree murder or attempted willful, deliberate and premeditated murder, the instructions required the jury to find the perpetrator acted with express malice, and Randolph shared the perpetrator's intent to kill. Given these requirements, there is no possibility that Randolph was convicted on a theory that imputed another's malice to him or that he could have assisted the perpetrator without knowing that he intended to kill the victims.

In light of the jury instructions, the verdicts reflect all the factual findings necessary to support the murder and attempted murder convictions under current law, and conclusively refute Randolph's allegation that he could no longer be convicted of murder and/or attempted murder because of the changes to sections 188 and 189. (*People v. Curiel* (2023) 15 Cal.5th 433,

12

465.) Randolph is therefore ineligible for relief under section 1172.6 as a matter of law (*Lewis*, *supra*, 11 Cal.5th at p. 971), and the superior court did not err in summarily denying the resentencing petition without an evidentiary hearing (*People v. Delgadillo, supra*, 14 Cal.5th at p. 233 [a defendant is not entitled to relief, and a resentencing petition properly denied at the prima facie stage, where the record of conviction makes ineligibility for relief clear]).

## II. Randolph's Challenge to the Sufficiency of the Evidence to Support the Claim He Was Convicted Under the Natural and Probable Consequences Doctrine Does Not Present a Valid Basis for Relief

In his supplemental brief, Randoph asserts the evidence is insufficient to establish he was the actual killer or the person responsible for firing the shots that struck the victims of the attempted murders. He further maintains that the jury's true finding on the section 12022.53, subdivision (d) firearm enhancement could not support a finding that he was the actual killer or had the requisite intent to kill, but that ambiguous instructions regarding the gun enhancements "created a pathway for the jurors to misapply" other instructions given. In support of these arguments, Randolph points to evidence he claims shows he only fired his gun into the air in self-defense after someone else fired a gun, he never shot at anyone, and the bullets that struck Houston and the other victims had come from the firearm(s) of the "members of the entourage who Tucker had words with inside the club." He also submits posttrial declarations to the effect that Randolph was not the man who shot any of the victims. He concludes that "on these facts," he could only have been convicted

of murder and attempted murder as an aider and abettor under the doctrine of natural and probable consequences.

As we have discussed, the jury was not instructed it could find Randolph guilty of murder or attempted murder under the natural and probable consequences doctrine. And Randolph's challenge to the sufficiency of the evidence in support of the only theories on which the jury was instructed does not present a valid basis for resentencing under section 1172.6.

"The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings. To the contrary, '[n]othing in the language of section [1172.6] suggests it was intended to provide redress for allegedly erroneous prior factfinding. . . . The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved.'" (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.)

Moreover, this case is not a habeas proceeding, and the new evidence Randolph has submitted has no bearing on the superior court's denial of the section 1172.6 petition at the prima facie stage. The Legislature created a specific statutory scheme for resentencing under section 1172.6, and the statute expressly provides that a court may consider new evidence from either party at an evidentiary hearing *after* an order to show cause has issued. (§ 1172.6, subd. (d)(1), (3).) It says nothing about considering such evidence *before* a sufficient prima facie showing is made. The Legislature easily could have provided for the introduction of such evidence at the prima facie stage, but it did not. (Cf. § 1172.6, subd. (c) with § 1172.6, subd. (d)(3).)

14

As our Supreme Court made clear in *Lewis*, after receiving briefing from the parties on a facially sufficient petition the superior court may consider the "record of conviction" in determining whether the prima facie showing is made. (*Lewis, supra*, 11 Cal.5th at pp. 971–972.) Courts have held that the record of conviction includes the closing arguments of counsel, as well as the jury instructions and the jury's verdict. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13 [record of conviction for purposes of § 1172.6 includes parties' closing arguments]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 [same]; see also *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.) Here, the prosecutor argued in closing that there was only one shooter, and as the only person with a gun, that shooter was Randolph. And contrary to Randolph's assertion, the prosecutor did not argue the jury could convict Randolph of the murder under the natural and probable consequences doctrine or under another theory of imputed malice.[3]

---

[3] Randolph quotes a portion of the prosecutor's argument to claim the prosecutor urged the jury to find Randolph guilty under the natural and probable consequences doctrine:

"If Mr. Tucker and/or Mr. Randolph went there that night knowing they were probably going to shoot at people, but didn't know death was going to result, the natural and probable consequence of the assault with firearm is the murder in this case, then they are both guilty of murder under aiding and abetting."

However, in the next sentence, which Randolph omits, the prosecutor made clear that the natural and probable

Finally, in addition to finding Randolph guilty of first degree murder and attempted murder, the jury found Randolph personally used and intentionally discharged a firearm causing great bodily injury and death. Thus, the jury's verdicts show that it accepted the prosecutor's argument that Randolph was the actual shooter, and so found.

In short, because Randolph was not prosecuted and the jury was not instructed on the natural and probable consequences doctrine or any other theory of imputed malice, he is ineligible for relief under section 1172.6 as a matter of law. We therefore affirm the superior court's denial of Randolph's petition for resentencing under section 1172.6, and reject the claims asserted in his supplemental brief.

---

consequences doctrine applied to Tucker's liability for murder, not to Randolph's:

"Mr. Tucker felt, okay, I am going to bring Mr. Randolph there, I am going to encourage him to commit assault with a firearm, if you find he aided and abetted and it resulted in the death of Larry Houston, he is still guilty of murder."

## DISPOSITION

The order of the superior court denying Randolph's petition for resentencing under Penal Code section 1172.6 is affirmed.

NOT TO BE PUBLISHED.

_____

LUI, P. J.      ASHMANN-GERST, J.      CHAVEZ, J.